**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHESAPEAKE OPERATING, INC.** | § | |
| | § | |
| **V.** | § | **A-06-CA-991-LY** |
| | § | |
| **STRATCO OPERATING COMPANY,** | § | |
| **INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion to Transfer Venue, filed on January 11, 2007 (Clerk's Docket No. 5); Plaintiff's Response (Clerk's Docket No. 10), filed on February 2, 2007; Defendant's Reply, filed on February 9, 2007 (Clerk's Docket No. 13), and Plaintiff's Surreply to Defendant's Reply, filed on March 14, 2007.

On January 23, 2007, the District Court referred the above-matter to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

**I. GENERAL BACKGROUND**

In September 1999, Plaintiff Chesapeake Operating, Inc. ("Plaintiff") entered into five separate oil and gas contracts ("Agreements") with Defendant Stratco Operating Company, Inc. ("Defendant") in which Plaintiff transferred to Defendant its rights and interests in five different oil

and gas wells and equipment located in the State of Louisiana.  The Agreements require Defendant to properly plug and abandon the wells, as well as to indemnify Plaintiff for all costs and expenses related to the wells that arise after the September 1, 1999 effective date of the Agreements.  Plaintiff alleges that Defendant has failed to properly plug and abandon the wells as was required by the Agreements and Louisiana law.  Plaintiff further alleges that because Defendant failed to comply with orders from the Louisiana Office of Conservation to complete the plugging and abandoning of the wells, the Office of Conservation ordered Plaintiff to pay for the completion of the plugging and abandoning process, which it has reportedly done "at great labor and expense to itself."  Plaintiff further alleges that on one of the wells Defendant left behind an oil spill that occurred during its ownership of the well.  Plaintiff contends that Defendant has failed to respond to any of its written demands to perform its obligations under the Agreements or to contribute any money toward the costs of Plaintiff's efforts in plugging and abandoning said wells.  Accordingly, on December 18, 2006, Plaintiff filed the instant federal lawsuit against Defendant, alleging breach of contract, unjust enrichment, as well as seeking a declaratory judgment.

For jurisdictional purposes, Plaintiff is an Oklahoma Corporation with its principal place of business in Oklahoma City, Oklahoma.  Defendant is a Texas corporation with its principal place of business in Austin, Texas.  Plaintiff's Complaint invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332 and alleges that venue is proper in the Western District of Texas pursuant to 28 U.S.C. 1391(a) "because jurisdiction will be based only on diversity of citizenship and Stratco resides in Travis County in the Western District of Texas." Complaint at ¶ 4.  When the only ground for federal jurisdiction is diversity of citizenship, and no separate statute provides a specific venue, as in this case, 28 U.S.C § 1391(a) governs the choice of venue.  Subsection 1391(a) provides that:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Defendant has now filed a Motion to Transfer Venue arguing that this case should be transferred to the Middle District of Louisiana for the convenience of the parties and witnesses and in the interests of justice, pursuant to 28 U.S.C. § 1404(a). Defendant argues that the Middle District of Louisiana is more convenient for the parties and witnesses in this case since "every transaction and occurrence that is the subject of Plaintiff's lawsuit took place in Louisiana." Defendant's Motion at 3. Specifically, Defendant emphasizes that the oil wells which are the subject matter of the lawsuit are located in Louisiana and that the majority of the witnesses in this case reside in Louisiana. Defendant argues that the only connection between this lawsuit and Texas is the fact that Defendant happens to be a Texas corporation. Accordingly, Defendant urges the Court to transfer this case to the Middle District of Louisiana.

## II.  ANALYSIS

### A.  Standard of Review under 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary

inconvenience and expense." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960). The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).   In considering a motion to transfer venue pursuant to § 1404(a), the district court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989). Further, courts should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co., L.P. v. A & H Supply Co.*, 396 F. Supp.2d 766, 776 (S.D. Tex. 2005).   It is well settled that the party seeking the transfer of venue bears the burden of demonstrating that the case should be transferred. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

**B.     Is the Middle District of Louisiana an appropriate venue for this case?**

        The first issue that the Court must address in ruling on the Motion to Transfer is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought."   *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 124 S.Ct. 826 (2003) (quoting 28 U.S.C. § 1404(a)). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2).  Importantly, there can be more than one district in which a substantial part of the events giving rise to the claim occurred.  14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3806.1 (3rd ed. 2007).  Thus, in this

case, it is possible that venue could be proper in both the Western District of Texas and the Middle District of Louisiana.  In an action for breach of contract "venue is proper at the place of performance." *American Carpet Mills v. Gunny Corporation*, 649 F.2d 1056, 1059 (5th Cir. 1981).

Defendant argues that this case could have been properly filed in the Middle District of Louisiana because that is where the contract was to be performed and the alleged breach occurred. As noted, Plaintiff alleges that Defendant breached its contractual obligations to properly plug and abandon the oil wells located in the Middle District of Louisiana and that Defendant has failed to reimburse Plaintiff for its expenses in plugging and abandoning the wells.  Plaintiff further alleges that Defendant caused an oil spill at one of the wells and failed to clean up said spill.  Because the alleged breach of the Agreements occurred in the Middle District of Louisiana, Defendant has demonstrated that this lawsuit "might have been brought" there.  *See Id.* Regardless of whether venue would also be appropriate in the Western District of Texas – since that is where the Defendant resides – the Court finds that venue would be appropriate in the Middle District of Louisiana.

Because this lawsuit could have been filed in the Middle District of Louisiana, the Court must next focus on whether Defendant has demonstrated that the "convenience of parties and witnesses" require the transfer of this action to the Middle District of Louisiana.  In deciding whether to transfer under this standard, the Court must consider various private and public interests in making its decision. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004).  The private concerns include: (1) plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the place of the alleged wrong; (4) the availability of compulsory process to secure the attendance of witnesses; (5) the cost of attendance for willing witnesses; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.*   The public concerns are: (1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Id.* The Court will now consider the above-factors to determine whether this case should be transferred.[1]

## C.   Private Factors

### 1.   Plaintiff's Choice of Forum

Plaintiff argues that the Court should attribute decisive weight to the Plaintiff's choice of forum in this case. While the plaintiff's choice of forum is clearly a factor to be considered, "in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337 F.3d at 434. In addition, the weight to be accorded the plaintiff's choice of forum "is diminished where plaintiff brings suit outside his home forum." *Heppner v. Krause Plow Corp., Inc.*, 2001 WL 124947 at * 2 (N.D. Tex. Feb. 18, 2001) (internal citations omitted). In the instant case, Plaintiff has chosen to file suit in this forum instead of its home district in Oklahoma. Accordingly, this factor does not weigh heavily in favor of the Plaintiff.

### 2.   The Convenience of Witnesses

The convenience of the witnesses has often been cited as the most important factor in determining whether a case should be transferred pursuant to § 1404(a). *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F. Supp. 1392, 1396 (S.D. Tex. 1992); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851 (3rd ed. 2007). However, this factor does not stand alone and must be weighed against the other relevant factors that

---

[1]The Fifth Circuit has specifically held that the location of counsel "is irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe*, 337 F.2d at 434. Accordingly, the Court will not consider this factor in its analysis.

typically are considered. *Id.*  Courts have found that the "convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Continental Airlines,* 805 F. Supp. at 1396.

Defendant argues that it will be substantially more convenient for the key witnesses in this case – who all reside in the Middle District of Louisiana or within the subpoena jurisdiction of the Louisiana federal courts – to litigate this case in the Middle District of Louisiana rather than in Texas.  The Court agrees.  Although the Defendant initially failed to sustain its burden of proof by specifically identifying the key witnesses to be called in this case, Defendant's Reply Brief sufficiently identifies the key witnesses in this case and summarizes their expected testimony.  *See Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp.2d 925, 929 (E.D. Tex. 1999) ("the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.").  For example, Defendant has identified its former pump and gage technician, Mack Knapp (a resident of the Middle District of Louisiana), as a key witness in this case since Mr. Knapp was personally responsible for the day-to-day operations at the oil wells which are the subject of this lawsuit and was a first hand witness to many of the events giving rise to this lawsuit.  Mr. Knapp is expected to testify with regard to his first hand personal knowledge of the factual circumstances surrounding the oil spill at the Weyerhaeuser 19 oil well.  Specifically, Mr. Knapp will testify that the padlock on the well had been deliberately broken on the day of the spill.  Mr. Knapp will also testify that third party Estis Well Service, LLC, a casing-pulling and well servicing company, failed to plug and abandon the wells as they had agreed to do.

Defendant has also identified the Commissioner of Conservation for the Louisiana Office of Conservation, James Welsh, another resident of the Middle District of Louisiana, as an important

7

witness in this case.  Mr. Welsh issued various compliance orders relating to the subject wells and declared the oil wells "orphaned" in November 2003 and informed Defendant that it was prohibited from performing any further operations on the wells.  Defendant argues that Mr. Welsh's testimony, as well as his agents' testimony, will be relevant to this lawsuit because these witnesses have personal knowledge of the work done at the wells immediately preceding the oil spill.  Further, Defendant avers that the testimony will be relevant in determining responsibility for the oil spill and for the plugging and abandoning work in light of Defendant's alleged exclusion from the well sites.

Defendant has also identified Estis Well Service, LLC ("Estis'), the casing-pulling and well servicing company located in Louisiana and within the subpoena power of the Middle District of Louisiana, who allegedly took possession of some of the casing, tubing, and wellheads at the subject oil wells, but who failed to fully perform its obligation to plug and abandon the wells.  Defendant contends that Estis' testimony is relevant to the instant lawsuit because Estis' actions and omissions substantially increased the risk of an oil spill at the subject wells.

Finally, Defendant has identified another Middle District of Louisiana resident, White Horse Maintenance, Inc. ("White Horse"), a general oil field services company, as an important witness in this case.  Defendant claims that White Horse performed some work on the subject oil wells and removed, without Defendant's authorization, certain pieces of equipment from the well sites.  Defendant contends that White Horse's actions substantially increased the risk of an oil spill at the wells.

While Plaintiff argues in its Surreply that Defendant has failed to demonstrate that the above-witnesses are "necessary" non-party witnesses, Plaintiff has failed to point to any non-party witnesses that are located in the Western District of Texas.  The only key witness who resides in the

Western District of Texas who Plaintiff has identified is Defendant's President, Tom Stratton.  Other

than Mr. Stratton, Plaintiff has only identified its own employees (who are presumably Oklahoma

residents) as potential witnesses in this case.  There is no evidence that these witnesses will not be

inconvenienced by being required to travel to Louisiana instead of Texas.  Based on the foregoing,

the Court finds that the convenience of the witness factor substantially weighs in favor of transferring

this case to the Middle District of Louisiana.

      **3.**      **Sources of Proof**

     Although some courts have found that this factor should be accorded little weight in the

modern era in light of the ease of transport of documents,[2] Defendant points out that this factor does

favor Louisiana over Texas in that "all sources of proof that are not in Defendant's control are

located in Louisiana." Defendant's Motion at 4.  Specifically, Defendant emphasizes that the oil

wells which are the subject of this lawsuit and all material witnesses are located in the Middle

District of Louisiana.  In addition, the regulatory body with authority over the subject wells – the

Louisiana Office of Conservation – is located in the Middle District of Louisiana.  In contrast,

Plaintiff has failed to persuasively claim that it will be inconvenienced by litigating this case in the

Middle District of Louisiana.

      **4.**      **Place of the Alleged Wrong**

     Courts have found that the place of the alleged wrong is one of the more important factors

in venue determination.  *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp.2d 786, 792 (S.D.

Tex. 2005).  Because the events which gave rise to the instant breach of contract action occurred in

---

[2]"[W]hen documents can be easily copied and shipped . . . the Court does not consider their present location an important factor in the transfer analysis." *Z-Tel Communications, Inc. v. SBC Communications, Inc.,* 331 F. Supp.2d 567, 576 (E.D. Tex. 2004)

the Middle District of Louisiana, clearly it would be more convenient for the parties and witnesses in this case to conduct discovery and litigate this case in Louisiana, rather than in Texas. While Plaintiff may have negotiated the Agreements in Austin, Texas,[3] the place where the alleged wrong took place was in the Middle District of Louisiana. *See American Carpet Mills*, 649 F.2d at 1059 (noting that in a breach of contract action, "venue is proper at the place of performance."). Accordingly, this factor also weighs in favor of transfer.

Based upon the foregoing, the Court finds that the private factors clearly weigh in favor of transferring this case to the Middle District of Louisiana. The Court must now consider the public factors under § 1404(a).

**D.    Public Factors**

As discussed above, the public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law.

**1.    <u>Local Interest</u>**

The Court finds that the Middle District of Louisiana has a far more direct interest in adjudicating this case than the Western District of Texas. The oil spill that Defendant is allegedly responsible for occurred in Louisiana. In addition, all of the oil wells which are the subject of his lawsuit are located in the Middle District of Louisiana. Clearly, "the citizens of that [district] would have a strong interest in correcting an alleged wrong in their community." *Lindloff v. Schenectady*

---

[3]Defendant also points out that the Agreements were actually executed by the Defendant in Houston, Texas, located in the Southern District of Texas.

*Intern.,* 950 F. Supp. 183, 186 (E.D. Tex.1996).  Consequently, this factor also favors transferring the case to the Middle District of Louisiana.

> 2.    **The Law**

As Plaintiff has emphasized, this lawsuit is primarily a breach of contract action.  However, there is no indication that this case would involve the application of Texas law.  Instead, it appears that Louisiana law will control.  For example, Plaintiff's Complaint alleges that Defendant's failure to properly plug and abandon the subject oil wells breached its Agreements with Plaintiff and "violated Louisiana law." Complaint at ¶14.  In addition, both Parties have noted the importance of the State of Louisiana's Commission of Conversation as an important player in this case.  Presumably, the United States District Court for the Middle District of Louisiana is more familiar with Louisiana state law than the Western District of Texas.  Therefore, this factor also weighs in favor of transferring this case to the Middle District of Louisiana.

> 3.    **Prejudice and Undue Delay**

When considering a § 1404(a) motion to transfer, "[a] prompt trial . . . is not without relevance to the convenience of the parties and witnesses and in the interest of justice." *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 827-8 (S.D. Tex. 1993) (quoting *Fannin v. Jones*, 229 F.2d 368, 369-70 (6th Cir.), *cert. denied*, 351 U.S. 938 (1956)).  Thus, the possibility of delay or prejudice if the transfer is granted is an important factor for the court to consider in determining whether to grant a motion to transfer venue under § 1404(a).  *Id.*  The Parties have not indicated that the Middle District of Louisiana is any more congested than the Western District of Texas or that litigating the case there will unduly delay the resolution of this case.  Accordingly, these factors do not weigh against transferring this case to the Middle District of Louisiana.

E.    **Conclusion**

After carefully considering the foregoing factors, the parties' briefs, the relevant caselaw, and the entire case file, the Court finds that the Defendant has sustained its burden to support its Motion to Transfer Venue.  After considering all of the relevant factors and assessing the totality of the circumstances of the case, the Court finds that the interests of justice and the convenience of the parties and witnesses dictate that this case should be transferred to the Middle District of Louisiana. Accordingly, the Court recommends that the District Court GRANT Defendant's Motion to Transfer Venue.

### III.  RECOMMENDATION

The undersigned Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant Stratco Operating Company, Inc.'s Motion to Transfer Venue (Clerk's Docket No. 5) and **TRANSFER** this lawsuit to the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1404(a).

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 14th day of March, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE